UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Laye K.,

        Petitioner,

v.

Markwayne Mullin,[1] *Secretary of Department of Homeland Security, in his official capacity*; Kika Scott, *Senior Official Performing the Duties of the Director for the U.S. Citizenship and Immigration Services, in her official capacity*; and Steven Rice, *Field Office Director, U.S. Citizenship and Immigration Services St. Paul-Minneapolis Field Office, in his official capacity*,

        Respondents.

File No. 25-cv-1076 (ECT/EMB)

**OPINION AND ORDER**

---

Cameron Lane Youngs Giebink, David L. Wilson, Gabriela Sophia Anderson, and Katherine Lourdes Santamaria El Bayoumi, Wilson Law Group, Minneapolis, MN, for Petitioner Laye K.

Craig R. Baune, United States Attorney's Office, Minneapolis, MN, for Respondents Markwayne Mullin, Kika Scott, and Steven Rice.

---

Laye K. is a Liberian citizen. He applied for lawful permanent residency under the Liberian Refugee Immigration Fairness Act. USCIS denied his application. The problem, as USCIS saw things, was that Laye's initial entry into the United States was based on a lie: When Laye was sixteen years old, he paid a smuggler to get him into the United States.

---

[1] Markwayne Mullin is automatically substituted in place of Kristi Noem under Federal Rule of Civil Procedure 25(d).

The smuggler presented U.S. customs agents with a passport that falsely indicated Laye was a U.S. citizen. Based on the fake passport—and the false representation of U.S. citizenship that came with it—Laye was allowed to enter the country. Under the law, noncitizens who falsely represent themselves to be U.S. citizens to gain admission into the country are generally ineligible to become lawful permanent residents. USCIS applied this general rule to deny Laye's lawful-permanent-residency application.

Laye brought this case to challenge legal conclusions USCIS reached to deny his application. Laye argues that, under the law, he cannot be held responsible for the smuggler's lie, and that even if he could, he is eligible for a statutory waiver that might excuse his actions.

Respondents seek the case's dismissal under Federal Rule of Civil Procedure 12(b)(6), and the motion will be granted. The legal arguments Laye makes to absolve him of responsibility for the smuggler's false representation of Laye's U.S. citizenship are not persuasive, and the waiver he identifies is not available.

I

Before turning to the background facts, the interplay between the usual Rule 12(b)(6) standards and the limited judicial review available under the governing immigration statute deserves a brief explanation. Under the familiar Rule 12(b)(6) standards, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl.*

2

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In one respect, the governing statute is at odds with these standards. The statute— the Liberian Refugee Immigration Fairness Act ("LRIF"), National Defense Authorization Act for Fiscal Year 2020, Pub. L. No. 116–92, § 7611, 133 Stat. 1198, 2309— circumscribes judicial review of a USCIS decision denying an application for lawful permanent residency submitted under the statute. *Id.* § 7611(g). Specifically, the LRIF precludes judicial review, *id.* § 7611(g)(1), except for "the review of a constitutional question or a question of law under section 704 of title 5, United States Code, with respect to a denial of adjustment of status under this section," *id.* § 7611(g)(2). The LRIF does not except—and thus strips a federal court of subject-matter jurisdiction to review—USCIS's factual findings. *See id.* § 7611(g). If a federal court cannot review the agency's factual findings, then it is difficult to understand how a court could, in line with the ordinary Rule 12(b)(6) standards, accept the truth of an LRIF-governed petition's factual allegations to the extent those allegations contradict or are different from the agency's factual findings. Put another way, a petitioner cannot end-run the LRIF's jurisdictional bar by alleging facts at odds with the agency's findings expecting a court will accept their truth at the motion-to-dismiss stage.

Regardless, as best I can tell, the interplay between the usual Rule 12(b)(6) standards and the LRIF's jurisdiction-stripping provision is largely academic here. USCIS's factual findings appear in a decision dated October 16, 2024. ECF No. 19-1. The parties agree that this document appropriately may be considered. Respondents filed the October 16 decision with their motion. *See id.* Laye did not object to the decision's consideration; he discussed it in his brief. *See* ECF No. 33 at 4.[2] And the agency's factual findings as described in this decision are not materially different from the factual allegations in Laye's Petition. That probably explains why Respondents agreed to assume the truth of the Petition's allegations as part of their motion. ECF No. 18 at 2 n.1. Regardless, if there are differences, the agency's factual findings are controlling. With these matters clarified, turn next to the facts found by the agency and the relevant procedural history.

II

Laye is a Liberian citizen. ECF No. 19-1 at 1; Pet. [ECF No. 1] ¶ 10. He was born in Liberia on February 10, 1998. ECF No. 19-1 at 3; Pet. ¶ 15. In 2014, when Laye was sixteen years old, he paid an individual named Ali Donzo $1,300 to assist Laye in gaining

---

[2]   Rule 12(b)(6) allows the document's consideration. Though considering "matters outside the pleadings" generally transforms a Rule 12(b)(6) motion into one for summary judgment, Fed. R. Civ. P. 12(d), this is not so when the relevant materials are "necessarily embraced" by the pleadings. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017). "In general, materials embraced by the complaint include documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings." *Id.* (citation modified). Courts "additionally consider 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned.'" *Id.* (quoting *Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012)). The agency's decision is integral to Laye's claims—they target the decision's legal premises.

4

admission into the United States.  ECF No. 19-1 at 4; Pet. ¶ 19.  Before boarding a plane bound for America, Ali provided Laye with a fake U.S. passport.  ECF No. 19-1 at 4.  Laye examined the document.  *Id.*  It purportedly belonged to an American citizen named "Alh Donzo."  *Id.*; Pet. ¶ 20.  Ali accompanied Laye on the flight to the United States.  *See* ECF No. 19-1 at 4; Pet. ¶ 21.  The flight landed in the United States—the Petition alleges at John F. Kennedy International Airport in New York—on August 27, 2014.  ECF No. 19-1 at 3; Pet. ¶ 21.  Laye "presented [himself] for admission" to the United States, ECF No. 19-1 at 4, perhaps at customs and security checkpoints overseas before arriving in New York, Pet. ¶ 21.  Ali "made the representations to [customs agents]" necessary to present Laye for admission, including presenting the fake passport and making false statements on Laye's behalf to the effect that he was a United States citizen.  ECF No. 19-1 at 4.  Laye said nothing about his citizenship status; Ali did all the talking.  *See id.*; Pet. ¶¶ 21–22.

In September 2020, Laye applied for lawful permanent residency in the United States under the LRIF.  ECF No. 19-1 at 1; Pet. ¶ 23.  USCIS denied the application.  *See* ECF No. 19-1 at 1.  USCIS determined that Laye was inadmissible under a provision of the Immigration and Nationality Act (or "INA"), 8 U.S.C. § 1182(a)(6)(C)(ii)(I).  ECF No. 19-1 at 4.  This provision says that any noncitizen "who falsely represents, or has falsely represented, himself or herself to be a citizen of the United States for any purpose of benefit under [the INA] . . . or any other Federal or State law is inadmissible."  8 U.S.C. § 1182(a)(6)(C)(ii)(I).  In reaching this determination, USCIS rejected Laye's argument that he remained admissible because it was Ali—and not Laye—who falsely claimed Laye was a citizen.  *See* ECF No. 19-1 at 4.  The agency explained:

> USCIS does not find your argument that you cannot be held accountable for the actions of the individual you paid to procure your entry into the United States to be persuasive. You are responsible for the representations made by the person you paid to assist you in entering the United States. *See* USCIS Policy Manual, Volume 8, Part K, Chapter 2 ("If an applicant's attorney or agent makes the false representation, the applicant is held responsible. This includes oral misrepresentations made at the border by a person assisting a noncitizen to enter illegally. Furthermore, a noncitizen cannot deny responsibility for any misrepresentation made by the noncitizen based on the advice of another person.").

*Id.* USCIS also rejected Laye's argument that his status as a minor exempted him from § 1182(a)(6)(C)(ii)(I)'s coverage. ECF No. 19-1 at 4. And USCIS determined that no waiver of inadmissibility was available. *Id.* Laye asked the agency to reopen and reconsider its decision. ECF No. 37 at 1. USCIS dismissed Laye's request and affirmed its initial decision. *See id.* at 3.

Laye asserts four claims in this case. (1) He claims the agency's legal interpretation of § 1182(a)(6)(C)(ii)(I) is incorrect. In Laye's view, the statute's inadmissibility bar "cannot be triggered by the acts of a minor, let alone the acts of a third party imputed to that minor." Pet. ¶ 63. Laye seeks judicial review of this interpretation under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq. See* Pet. ¶¶ 59–69 (Count I). (2) Laye claims the inadmissibility-waiver provision in 8 U.S.C. § 1159(c) applies to lawful-permanent-residency claims under the LRIF, and he claims the agency erred in not reaching this legal conclusion. Pet. ¶¶ 73–74. He seeks judicial review of this interpretation under the APA. *See* Pet. ¶¶ 70–80 (Count II). (3) Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, Laye seeks a declaration in his favor on the legal question

raised in Count I—*i.e.*, that "USCIS cannot invoke 8 U.S.C. § 1182(a)(6)(C)(ii)([I]) based on the conduct of a minor or the conduct of an adult third party imputed to a minor."  Pet. ¶ 83; *see id.* ¶¶ 81–83 (Count III).  (4) Pursuant to the Declaratory Judgment Act, Laye seeks a declaration in his favor on the legal question raised in Count II—*i.e.*, "that 8 U.S.C. § 1159(c) forms the proper waiver standard for applications for adjustment of status under LRIF for applicants who USCIS declares need[] a waiver of inadmissibility."  Pet. ¶ 86; *see id.* ¶¶ 84–86 (Count IV).  For relief, Laye seeks a remand of his lawful-permanent-residency application to USCIS for further adjudication consistent with his interpretation of the law and attorneys' fees and costs incurred in prosecuting this action.  *See* Pet. at 12 ¶¶ 1–7 (following "WHEREFORE" clause).

## III

### A

The INA defines "lawfully admitted for permanent residence" to mean "the status of having been lawfully accorded the privilege of residing permanently in the United States."  *Arellano-Garcia v. Gonzales*, 429 F.3d 1183, 1186 (8th Cir. 2005) (quoting 8 U.S.C. § 1101(a)(20)).  Noncitizens present in the United States can apply to adjust their status to that of a permanent resident through multiple legal pathways.  These include, for example, 8 U.S.C. § 1255 ("Adjustment of status of nonimmigrant to that of person admitted for permanent residence"), 8 U.S.C. § 1159 ("Adjustment of status of refugees"), and country-of-origin-specific provisions.  An individual seeking adjustment of status must "make[] an application for such adjustment" and demonstrate that he is eligible under the

relevant adjustment provision. 8 U.S.C. § 1255(a); *accord* 8 U.S.C. § 1159(b); 8 C.F.R. § 209.1.

The LRIF is a country-of-origin-specific adjustment provision. It "allows for the adjustment of status of certain Liberian nationals [who] are otherwise admissible." *Bryant v. Rice,* No. 24-cv-3687 (JRT/ECW), 2025 WL 2210889, at *2 (D. Minn. Aug. 4, 2025). The LRIF directs that the Secretary of the Department of Homeland Security "shall adjust the status of an alien" who meets certain criteria, including that the person be "admissible to the United States for permanent residence." LRIF § 7611(b)(1); *see Prince K. v. Noem*, No. 24-cv-3134 (PJS/ECW), 2025 WL 2697501, at *3 (D. Minn. Sep. 22, 2025). The INA, 8 U.S.C. § 1182(a), identifies "a number of things that make an alien *inadmissible* to the United States for permanent residence," *Prince K.*, 2025 WL 2697501, at *3. One of the things that makes an alien inadmissible is a false claim to United States citizenship. 8 U.S.C. § 1182(a)(6)(C)(ii)(I).

Laye claims that, for three reasons, the agency's determination that he is inadmissible under § 1182(a)(6)(C)(ii)(I) was legally incorrect. First, Laye argues that he alone must have falsely represented that he was a United States citizen—that is, a third party's representation doesn't count under the statute. Second, Laye argues that, if a third party's representation counts, the statute required Laye to know the representation was being made on his behalf. Third, Laye argues that, if a third party's representation counts,

the statute does not apply to a juvenile on whose behalf of the representation is made. Consider each of these arguments in that order.[3]

1

The first issue is one of statutory interpretation. Framed in this case's context, the question is whether § 1182(a)(6)(C)(ii)(I)'s inadmissibility bar may be applied to an alien whose hired smuggler makes a false U.S. citizenship claim on the alien's behalf. For several reasons, the better answer is it may.

(a) The statute's text is broad enough to encompass this circumstance. The statute does not say that the alien "alone" or "personally" must falsely represent his citizenship. And it is generally improper to interpret a federal statute in a way that would "require[] adding a word to the statute's text." *Nat'l R.R. Passenger Corp. v. United States*, 431 F.3d 374, 378 (D.C. Cir. 2005) (citing *Lamie v. U.S. Tr.*, 540 U.S. 526, 538 (2004)); *see Dekovic v. Rubio*, No. 24-1431, --- F.4th ---, 2026 WL 668425, at *10 (10th Cir. Mar. 10, 2026) (rejecting interpretation that "would require us to read words into the statute that are not included in its plain text"); *see also Exby-Stolley v. Bd. of Cnty. Comm'rs*, 979 F.3d 784, 810 (10th Cir. 2020) (en banc) (noting that when interpreting a statute, it "is generally impermissible" to "effectively add[] words to the statute").

(b) A rule of construction supports this understanding. When "a federal statute . . . is silent as to the applicability of agency law, the Supreme Court has stated that the

---

[3]   If he is responsible for Ali's false claim of U.S. citizenship, Laye does not dispute that the representation was made "for any purpose or benefit under [the INA]," namely admission into the United States.  8 U.S.C. § 1182(a)(6)(C)(ii)(I).

9

'apparent authority theory has long been the settled rule in the federal system.'" *Arriaga v. Fl. Pac. Farms, L.L.C.*, 305 F.3d 1228, 1244–45 (11th Cir. 2002) (quoting *Am. Soc'y of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 567 (1982)). "[A]pparent authority is 'created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have that act done on his behalf by the person purporting to act for him.'" *Id.* at 1245 (quoting Restatement (Second) of Agency § 27 (A.L.I. 1958)). Applying this rule here, an agent's representation of false U.S. citizenship on the noncitizen's behalf could trigger § 1182(a)(6)(C)(ii)(I)'s inadmissibility bar.

(c) No authority construes § 1182(a)(6)(C)(ii)(I)'s inadmissibility bar as being limited to aliens who "alone" or "personally" misrepresent their U.S. citizenship status, and one sign points the other way. USCIS has understood § 1182(a)(6)(C)(ii)(I) to incorporate the apparent-authority rule. Recall the agency applied the following provision from its then-effective Policy Manual in denying Laye's lawful-permanent-residency application:

> If an applicant's attorney or agent makes the false representation, the applicant is held responsible. This includes oral misrepresentations made at the border by a person assisting an alien to enter illegally. Furthermore, an alien cannot deny responsibility for any misrepresentation made by the alien based on the advice of another person.

U.S. Citizenship & Immigr. Servs., *Policy Manual*, vol. 8, pt. K, ch. 2 § D.6, https://web.archive.org/web/20250716135754/https:/www.uscis.gov/policy-manual/volume-8

10

-part-k-chapter-2 (last visited Mar. 29, 2026);[4] *see* ECF No. 19-1 at 4 (loosely quoting the Policy Manual provision).  Though the agency's interpretation is not entitled to deference, *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–413 (2024), Laye has identified no authority questioning the agency's historical understanding, and the Court's independent research hasn't identified any, either.

(d) Construing the statute as limiting its inadmissibility consequence to aliens who "alone" or "personally" misrepresent their U.S. citizenship status would risk absurd incentives and results.  *See Nixon v. Mo. Mun. League*, 541 U.S. 125, 138 (2004) (recognizing that a court should "not construe a statute in a manner that leads to absurd or futile results" (citing *United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 543 (1940))). That construction would give a noncitizen strong incentive to retain a third party to falsely represent his U.S. citizenship.  This work-around's obviousness would, in turn, risk substantially constricting the statute's utility.

Laye makes essentially three arguments to support his preferred construction of § 1182(a)(6)(C)(ii)(I), but none is persuasive.  First, Laye argues that the statute's use of "himself or herself" limits its reach to aliens who personally misrepresent their citizenship. ECF No. 33 at 8–9.  This misconstrues the statute's text.  The words "himself or herself"

---

[4]    The first sentence of this provision has since been revised.  It now reads: "If someone else, such as an alien's attorney, agent, or legal representative makes the false claim to U.S. citizenship on the alien's behalf, the alien is held responsible if the officer finds the alien was aware."  U.S. Citizenship & Immigr. Servs., *Policy Manual*, vol. 8, pt. K, ch. 2 § D.6, https://www.uscis.gov/policy-manual/volume-8-part-k-chapter-2 (last visited Mar. 29, 2026).  The remaining two sentences have not substantively changed. *See id.* (using "false claim" in place of "misrepresentation").

modify the misrepresentation (the alien's citizenship), not the identity of the individual making the misrepresentation. 8 U.S.C. § 1182(a)(6)(C)(ii)(I). Second, Laye argues that "Congress expressly imputed the conduct of third parties, conspirators, and agents to noncitizens . . . elsewhere in the [INA]," suggesting it did not intend to do so in § 1182(a)(6)(C)(ii)(I). ECF No. 33 at 10; *see Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (citation modified)). But the provisions Laye cites to support this contention, *see* ECF No. 33 at 16–17, address a different circumstance. They prescribe consequences for those who aid noncitizens in perpetrating an unlawful act. *See, e.g.*, 8 U.S.C. 1182(a)(6)(E)(i) ("Any alien who at any time knowingly has encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law is inadmissible."). None of the provisions Laye cites addresses whether a noncitizen may face some adverse consequence based on the actions of the noncitizen's agent. They are not helpful for purposes of applying the statutory-construction principle articulated in *Russello*. Third, Laye argues that a decision from the Board of Immigration Appeals (or "BIA"), *Matter of M-R-*, 6 I. & N. Dec. 259 (B.I.A. 1954), shows that the BIA has "properly confined culpability to the actor himself for decades." ECF No. 33 at 36. The decision does not support that contention. The decision addressed whether a statute that rendered inadmissible any noncitizen who procured false documents to enable himself to enter the United States applied to a noncitizen (M.R.) who procured false documents to enable others (his children)

12

to enter the country.  *See Matter of M-R-*, 6 I. & N. Dec. at 259–261.  The BIA concluded that the statute applied "only to the alien whose machinations were on his own behalf."  *Id.* at 260.  The decision did not address whether a noncitizen might be held responsible for the representations of an agent or another third party made on the noncitizen's behalf.[5]

2

The answer to Laye's next contention—that, if the smuggler's false representation of Laye's U.S. citizenship counts, the statute required Laye to know the misrepresentation was being made on his behalf—is more straightforward.  I don't understand Respondents to disagree.  They do not argue that Laye would have been inadmissible under § 1182(a)(6)(C)(ii)(I) had he been unaware of Ali's misrepresentation.  This argument's absence makes sense considering the agency's published understanding of the statute.  As applied to noncitizens who benefit from false U.S. citizenship representations made on their behalf by third parties, the agency understands § 1182(a)(6)(C)(ii)(I) to require that the noncitizen be "aware" of the false representation.  U.S. Citizenship & Immigr. Servs., *Policy Manual*, vol. 8, pt. K, ch. 2 § D.6 (explaining that "the alien is held responsible" for

---

[5]     The agency continues to understand § 1182(a)(6)(C)(ii)(I) as the Board construed the statute in *Matter of M-R-*.  *See* U.S. Citizenship & Immigr. Servs., *Policy Manual*, vol. 8, pt. K, ch. 2 § D.5, https://www.uscis.gov/policy-manual/volume-8-part-k-chapter-2 (last visited Mar. 28, 2026) ("An alien is only inadmissible if he or she makes a false claim to U.S. citizenship for his or her own purpose or benefit.  If an alien falsely claims U.S. citizenship on behalf of another person, the alien that made the misrepresentation is not inadmissible for falsely claiming U.S. citizenship.").

13

the third party's misrepresentation "if the officer finds the alien was aware"), https://

www.uscis.gov/policy-manual/volume-8-part-k-chapter-2 (last visited Mar. 29, 2026).[6]

The agency's October 16, 2024 decision reflects this understanding.  USCIS found

several facts establishing Laye's awareness of Ali's false representation that Laye was a

United States citizen.  Based on Laye's own statements, the agency determined (1) that

Laye paid Ali $1,300 to assist in procuring Laye's admission to the U.S.; (2) that, as part

of the plan, Ali gave Laye a U.S. passport that Laye testified "would get [him] into the

U.S."; (3) that Laye told USCIS he "looked at the passport and saw that it belonged to a

U.S. citizen"; (4) that Laye knew Ali "intended to present a false passport from a U.S.

citizen on [Laye's] behalf in order to procure [Laye's] admission to the United States"; and

(5) that Laye stood by when Ali followed through on the plan by presenting the fake

passport to customs officials and falsely representing that Laye was a U.S. citizen.  ECF

No. 19-1 at 4.  Considering these facts, it is not surprising that Laye testified during USCIS

interviews in March 2019 and March 2021 that he used a false U.S. passport to enter the

United States.  *See id.* at 3 ("During your interview with USCIS on March 11, 2019, for

your first Form I-485, you testified you used a U.S. passport to enter the United States, and

the name and photo in the passport were not your own."); *see also id.* ("On March 11, 2021,

during your interview for your second Form I-485, you again testified you entered the

---

[6]     Beyond his awareness or knowledge of Ali's misrepresentation, Laye does not argue that § 1182(a)(6)(C)(ii)(I) includes a particular intent requirement.  *See* ECF No. 33 at 10–15.

United States using a U.S. passport under the identity of Alh Donzo."). These findings are unreviewable here. LRIF § 7611(g).[7]

Though the agency did not say explicitly that Laye "was aware" of Ali's false representation that Laye was a U.S. citizen, I don't see how the findings might be construed another way (*i.e.*, as either a finding that Laye was unaware or as no finding on the question). Laye knew the passport was going to be passed off as if it were his. Laye knew the passport "belonged to a U.S. citizen." And Laye knew the passport's character as belonging to a U.S. citizen was essential to procuring his admission into the United States. ECF No. 19-1 at 4. The agency interpreted and applied the statute as Laye argues it should have.

3

Laye argues that, under § 1182(a)(6)(C)(ii)(I), an agent's false representation of U.S. citizenship cannot count against the noncitizen on whose behalf the false representation was made when the noncitizen was a minor. Laye identifies several authorities to support this contention, but none justifies the legal conclusion he seeks. These authorities are addressed here in the order they appear in Laye's opposition brief.

---

[7]    In his brief, Laye seems to challenge the factual findings underlying USCIS's determination that he was aware of Ali's misrepresentation. Laye claims, for example, that he "did not hire [Ali] to say he was a citizen," that "he was not told he would be pretending to be a U.S. Citizen," and that his background "[a]s an orphan from a war-torn nation" who was "raised in refugee camps" left him "unaware that presenting a U.S. passport was an implicit claim to U.S. citizenship." ECF No. 33 at 11. These allegations cannot be accepted as true without reviewing and rejecting USCIS's findings, but that would be improper. *See* LRIF § 7611(g).

(a) Laye cites immigration authorities refusing to impute noncitizen parents' unlawful actions or those actions' consequences to the parents' noncitizen children, but these authorities do not support a comparable legal conclusion regarding Laye's responsibility for Ali's false representation of Laye's U.S. citizenship. Laye cites a case, *Singh v. Gonzales*, 451 F.3d 400 (6th Cir. 2006), in which the Sixth Circuit held that the BIA lacked a reasonable basis to impute the fraudulent conduct of noncitizen parents to their five-year-old daughter, *id.* at 402–09. ECF No. 33 at 17–18. It is difficult to understand how this rule might apply or hold significance here. This case does not involve a parent-child relationship. As the parties have characterized things, this case involves a principal-agent relationship. And though it may be possible for a parent to act "in a capacity difficult to distinguish from that of an agent," *Cruz v. Superior Ct.*, 17 Cal. Rptr. 3d 368, 371 (Cal. Ct. App. 2004), the court in *Singh* did not find that the parent-child relationship at issue in that case possessed principal-agent attributes. It did not address the question at all. Nor does Laye explain how the *Singh* court's analysis might apply to the ordinary (non-parent-child) principal-agent relationship. Similarly, Laye argues that Ali very likely committed a federal crime when he facilitated Laye's entry into the United States, ECF No. 33 at 20 (citing 8 U.S.C. § 1324(a)(1)(A)(iv), (a)(2)(B)(ii)), and he points out that courts do not impute a noncitizen parents' actions to their noncitizen children "where the imputation involves unlawful conduct," ECF No. 33 at 20 (quoting *Shyiak v. Bureau of Citizenship & Immigr. Servs.*, 579 F. Supp. 2d 900, 908 (W.D. Mich. 2008)). Laye cites no authority applying this non-imputation rule outside the parent-child context.

16

(b) Laye cites authorities that treat minors differently from adults in the immigration context to show that minors are categorically "exempted from the inadmissibility provisions at 8 U.S.C. § 1182(a)(6)(C)(ii)(I)," ECF No. 33 at 21, but considered against statutory text, the cited authorities don't carry that weight. Begin with the statute's text. It applies to "[a]ny alien" who falsely represents that he or she is a U.S. citizen. 8 U.S.C. § 1182(a)(6)(C)(ii)(I). As the Supreme Court "has repeatedly explained, the word 'any' has an expansive meaning." *Patel v. Garland*, 596 U.S. 328, 338 (2022) (citation modified). It means the statute applies to aliens "of whatever kind." *Id.* If Congress intended the statute not to apply to minors, "any" would be an anomalous word choice. There is more. When Congress wanted to exempt minor children from an immigration statute's coverage, it did so explicitly. *See, e.g.*, 8 U.S.C. § 1182(a)(9)(B)(iii)(I). That Congress included an explicit minor-child exemption in a different immigration provision—especially a subsection within the same statute—indicates it did not intend § 1182(a)(6)(C)(ii)(I) to share that exemption.[8]

---

[8]    Laye cites several INA provisions that treat minors and adults differently. *See* ECF No. 33 at 21–25. He points out, for example, that an unaccompanied minor cannot swear an oath to become a U.S. citizen, *id.* at 21–22 (citing 8 U.S.C. § 1445(f)), admit removability, *id.* at 22 (citing 8 C.F.R. § 1240.10(c)), or sponsor noncitizens for immigration purposes, *id.* at 23 (first citing 8 U.S.C. § 1183a(f)(1); and then citing 8 C.F.R. § 213a.2(c)(A)). These provisions reflect policy choices to treat minors and adults differently in specific contexts. If anything, they support the conclusion that Congress did not make the same policy choice in § 1182(a)(6)(C)(ii)(I). For essentially this same reason, the "broader jurisprudence surrounding minors" Laye cites, *see* ECF No. 33 at 29–31 (citing, *e.g.*, *Bellotti v. Baird*, 443 U.S. 622, 635 (1979)), does not inform the statute's interpretation.

Laye argues that an Eighth Circuit case, *Sandoval v. Holder*, 641 F.3d 982 (8th Cir. 2011), supports the conclusion that § 1182(a)(6)(C)(ii)(I) does not apply to minors. ECF No. 33 at 21.  In that case, a noncitizen (Sandoval) applied for lawful permanent residency.  *Sandoval*, 641 F.3d at 984.  USCIS denied Sandoval's application because, several years earlier when she was sixteen years old, Sandoval had misrepresented to immigration authorities that she was a U.S. citizen.  *Id.*  During proceedings before an immigration judge, Sandoval argued that § 1182(a)(6)(C)(ii)(I)'s inadmissibility bar "should not apply to . . . minor children in the same way it applies to adults."  *Sandoval*, 641 F.3d at 984.  The immigration judge accepted the argument, but the BIA did not.  *Id.* at 985.  Before the Eighth Circuit, Sandoval argued that "even where a statute does not provide for a different treatment of minors on its face, the agency has stepped in to do so." *Id.* at 986.  "The problem," as the Eighth Circuit saw it, was that the BIA had failed to "dedicate the agency to a clear position subject to meaningful judicial review."  *Id.* at 987; *see Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984) (instructing courts to defer to an agency's reasonable interpretation of a statute), *overruled by*, *Loper Bright Enters.*, 603 U.S. at 412.  The Eighth Circuit explained:

> The Board's statement concerning the lack of authority for the IJ's initial position is susceptible of at least three interpretations: (a) that the statute applies indiscriminately to any alien, no matter what the age; (b) that the statute has to be interpreted on a case-to-case basis with an eye toward certain factors; or (c) that the statute applies, perhaps presumptively, to all individuals above [a] certain age designated by the agency, but that age happens to be lower than eighteen.

18

*Sandoval*, 641 F.3d at 987. The court remanded the case to the BIA "with instructions to clarify the standard it uses in applying [§ 1182(a)(6)(C)(ii)(I)] to unaccompanied minors and to articulate the reasons Sandoval deserves no relief under that standard." *Id.* at 983.

*Sandoval* does not support implying a minor-child exemption in § 1182(a)(6)(C)(ii)(I). The court did not decide the legal issue. It remanded the case to the agency for a decision and explanation, but there is no subsequent history showing how the agency resolved the question. The Eighth Circuit did not indicate that construing the statute to apply to minor children would have been inappropriate; each of the three interpretations it identified allowed for that possibility. *Sandoval*, 641 F.3d at 987. The Eighth Circuit's options did not include interpreting § 1182(a)(6)(C)(ii)(I) categorically not to apply to minor children.

If *Sandoval* were understood to support the idea that a minor's status should be considered in applying § 1182(a)(6)(C)(ii)(I)'s inadmissibility bar, the agency did that here. The agency concluded that the statute "does not contain an exemption based solely on the fact that an individual is a minor." ECF No. 19-1 at 4. The agency, in other words, did not say that Laye's minor status was irrelevant to its decision. And the agency accounted for Laye's age throughout its decision. It repeated Laye's contention that he "should not be found inadmissible . . . because [he was] a minor at the time of [his] entry and therefore lacked the capacity to understand the nature and consequences of a false claim to U.S. citizenship." *Id.* at 2. The agency acknowledged that Laye was sixteen years old when Ali made the false representation on Laye's behalf. *Id.* at 3. And the agency found a series of facts from which it determined that Laye (notwithstanding his age) was responsible for his

19

actions in hiring Ali to smuggle him into the United States, including Ali's presentation of the fake passport and statements on Laye's behalf.  *Id.* at 3–4.

(c) Laye cites state cases and one pre-*Erie*[9] federal case applying rules limiting a minor's ability to contract.  *See* ECF No. 33 at 35–38.  Laye argues that, even if he contracted with Ali to smuggle him into the United States, these common-law rules forbid USCIS from attributing Ali's representations to him because the underlying contract between Laye and Ali was unenforceable.  *Id.* at 37.  This contention is not convincing. State or pre-*Erie* federal common law does not often guide or inform the application of a federal statute, and Laye cites no case in which a court interpreted a federal immigration statute like § 1182(a)(6)(C)(ii)(I) by applying or referring to state authorities governing minors' capacity to contract.  Even if one accepts that these authorities might inform the inquiry and that Laye's agreement with Ali was "voidable" at Laye's election, *see* ECF No. 33 at 36–37, USCIS's decision did not depend on enforcing the agreement.  Finally, Laye argues that he "disaffirmed any claim to citizenship well before he reached the age of majority" when, in August 2015, he applied for temporary protected status.  *Id.* at 37–38. That application required Laye to disclose that he was not a U.S. citizen.  *See id.* at 38 (citing 8 U.S.C. § 1254a(a)(1)).  If Laye means to argue that his temporary-protected-status application amounted to a repudiation of his agreement with Ali, any repudiation seems

---

9       *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

beside the point because (again) USCIS's decision that Laye is inadmissible under § 1182(a)(6)(C)(ii)(I) did not depend on enforcing the agreement.[10]

B

Laye contends that the inadmissibility waiver in 8 U.S.C. § 1159(c) applies to lawful-permanent-residency applications under the LRIF, and he claims the agency erred in not reaching this legal conclusion. ECF No. 33 at 40–41. "Section 1159(c) is a specialized waiver-of-inadmissibility provision that applies to only two groups of non-citizens present in the United States: (1) those who were admitted under § 1157 as refugees and (2) those who have been granted asylum under § 1158." *Prince K.*, 2025 WL 2697501, at *5; *see* 8 U.S.C. § 1159(a)(1) (applying to "[a]ny alien who has been admitted to the United States under section 1157 of this title" and meets other conditions); *id.* § 1159(b) (applying to "any alien granted asylum"); *see Cela v. Garland*, 75 F.4th 355, 361 n.9 (4th Cir. 2023) (explaining distinction between refugees and asylees).

Two judges in this District recently concluded that § 1159(c)'s inadmissibility waiver does not apply to noncitizens who seek to adjust their status under the LRIF. *See Prince K.*, 2025 WL 2697501, at *5; *Bryant*, 2025 WL 2210889, at *4. In *Prince K.*, Chief Judge Schiltz concluded that § 1159(c)'s inadmissibility waiver provision did not apply to a plaintiff seeking admission under the LRIF who was deemed inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i) for having misrepresented material information about his marital status.

---

[10]    Laye does not argue that the timely-retraction doctrine applies. *See Sandoval*, 641 F.3d at 988–89; *see also Barboza v. U.S. Citizenship & Immigr. Servs.*, No. 18-CV-1027-KEM, 2018 WL 11541023, at *2–4 (N.D. Iowa Dec. 3, 2018).

2025 WL 2697501, at *2, *5.  But Prince was neither admitted as a refugee under § 1157 nor "granted asylum" under § 1158.  *Prince K.*, 2025 WL 2697501, at *5.  Chief Judge Schiltz also determined that Congress did not incorporate the § 1159(c) waiver standard into the LRIF and that the four inadmissibility grounds exempted from the LRIF did not apply to Prince.  *Id.*  Judge Tunheim reached the same result in *Bryant*, finding no basis to apply the § 1159(c) waiver to LRIF applicants deemed inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i) for making fraudulent and willful misrepresentations in seeking immigration benefits.  2025 WL 2210889, at *1, *3–4.

Laye has identified no good reason to reach a different conclusion here.  He was not admitted to the United States as a refugee under § 1157 or as an asylee under § 1158, meaning § 1159(c)'s inadmissibility waiver does not apply to him.  And I agree with Chief Judge Schiltz and Judge Tunheim's legal conclusions that the LRIF neither incorporates § 1159(c)'s inadmissibility waiver nor exempts § 1182(a)(6)(C)(ii)(I) as a ground of inadmissibility.

**ORDER**

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1.      Respondents' Motion to Dismiss [ECF No. 17] is **GRANTED**; and

2.      The Petition for Relief Under 5 U.S.C. § 706 [ECF No. 1] is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: March 30, 2026                              s/ Eric C. Tostrud_____
                                                   Eric C. Tostrud
                                                   United States District Court